All right, our next case this morning is number 23554, Bautista Lopez v. Garland Mr. Chavez, if you're ready Good morning, your honors. May it please the court, Jose Luis Chavez on behalf of Petitioner Jose Carlos Bautista Lopez. We're here before you based on two points. Whether the denial of the withholding of removal, whether that basis was relied on correctly by the law. And number two, was it adequately excuse me, prong two of that issue is whether or not they properly considered the testimony of my client in that consideration. The second issue is whether the denial of the cat claim properly applied the standard of law to petitioner's burden. We submit on the cat claim just to start there. Is there any evidence of acquiescence or involvement of government officials that were presented? That was presented in the beaten and assaulted. And he ultimately, there was individuals there, friends of his that detained the individual while he went to the hospital. And he then returned and filed a claim with his mother a few hours later after they had left the hospital. And did you argue that in your opening brief? Can you just point us towards where you discuss that as a matter of government involvement? The government involvement. In the opening brief, there was In the opening brief, in that particular section, I did not discuss it directly as I did with the withholding only, where I developed that area. In the cat claim, I focused on the lack of past persecution, excuse me, past torture that was not identified in the decision by the BIA. Can I ask you to move back to your claim about the three people and the knife? Your argument is that the BIA, the IJ failed to consider that. And then you went to the BIA. And am I right in thinking you never argued to the BIA that the IJ failed to consider that? Yes, Your Honor. What I did there was I incorporated the summary of the testimony by way of the transcript. In other words, folks, what I'm asking, whether in your brief to the BIA, you said the IJ made a mistake. We presented this evidence, I guess, through the through the boyfriend or and then through your client saying, yeah, that's what happened. But the IJ never treated it. You never argued that to the BIA, did you? No, Your Honor, not directly. So now but you're now you're arguing it to us. And I guess my question is, haven't you failed to exhaust that claim in the agency? Well, Your Honor, I would say that I did not because based upon the totality of the record, which was well, there was evidence in the record from which the board might or might not arrived at that conclusion. But don't you have a burden in exhausting to point them to the evidence in the record and make an argument about its importance? We don't find that things are exhausted because the claim could have been made on the evidence in the record. We find that they're exhausted because it was made. And I take it in this case, you really didn't make this argument to the BIA. Understood, Your Honor. Yes. The way the court has articulated today, I did not exhaust it in the form that has been identified this morning. Is there any law rule about exhausting each individual fact? Do you know any case law that is any exhaustion law requires that you actually talk about each piece of evidence that support when you're saying in general, the record supports, that's what you said, right? Or in general, you said the record, yes, there is evidence of past persecution. You didn't point to this particular piece. That is correct, Your Honor. I did not point to a particular piece of law that I saw of evidence that identified that particular. Does the case law require that each piece of evidence be exhausted? It is my position that the case law does not require that as the actual record itself holds the evidence. Hence, why there's such a high standard as we continue to review the cases as they move up in level. But here's my concern with that. Your argument to us, if the argument to us is just look at this whole record, the BIA erred in finding that it didn't find compelled finding of persecution, we would review the BIA's decision for substantial evidence. What you're arguing to us is that the BIA made a legal error in not considering this evidence, right? My argument is they made a legal error in the analysis, the level of law that they used. By not mentioning this evidence? Yes, Your Honor. Okay. Is that your argument or is your argument that if you include this evidence, then there isn't substantial evidence for its conclusion that there wasn't sufficient evidence of past persecution? My argument is that there was enough evidence on the record and it was argued and presented to the court. Right. That ultimately there should have been a founding. So you're asking us to look at all of the evidence, including that evidence, and conclude whether and say that they were there, their conclusion that there was not evidence, sufficient evidence of past persecution is not supported by substantial evidence. That's correct, Your Honor. And if we review it that way, then it seems to me you've got to demonstrate to us that the record compels a contrary conclusion, correct? Right. Correct. And have you made that argument to us? And I did make that argument that that is exactly I believe that the substantial evidence... Okay, so tell me how the record... I understand how there's evidence in support of your position. Why is any reasonable finder of fact compelled to reach the conclusion that you assert today? It seems to me there's some evidence, but they say it doesn't meet our standards. It's not enough. Okay. When you take the analysis of the evidence in its totality, Your Honor, and not pick and choose what you would like to give more or less weight to, I think that's how we get to that conclusion. Specifically, I pointed to the articles and the country conditions at the very end of that hearing and of the trial, and that was submitted as part of the record. What was very relevant to that set of facts is how the country of Mexico was viewing gay individuals. This was in the... Wait a minute. I thought this was all going to past persecution. Well, past persecution... It has to be past persecution of him, not of somebody else. So the country conditions report doesn't establish past persecution of him, does it? No, Your Honor. Let me restate my point, please. As to the past persecution, I believe the evidence that we presented, which showed a constant injury or threats of harm to him in two different ways. We had the specific harm that happened to him in 97, which I've articulated to the court, but then we also had additional harm that was happening during the course of his life where he was ultimately threatened by some individuals at knife point. That was the evidence that we presented to show that there was past persecution. So even assuming you've exhausted the claim about the knife point, your argument is that those two incidents compel a finding of past persecution. No reasonable finder of fact could not make a finding of past persecution based on it. That is correct, Your Honor, based upon what I just touched on, the totality of the circumstances. You haven't really highlighted this, but you're also arguing that the 97 incident was relatively severe as compared to others that were determined not to be individually sufficient for past persecution. Is that right? I'm sorry, I didn't... What exactly happened in the 1997 incident? In the 1997 incident, my client was attacked by an individual and was beaten. He was hospitalized and had stitches. He was... My client was with other individuals there who... But in terms of severity, he was hospitalized, he had stitches, his mother says she was hanging out, he has scars from this. Yes, he has scars, he has injuries from that, longstanding scars from that incident. So as... There's a habit in these persecution cases to compare, you know, how severe... If there's an individual incident, how severe it was and how would you characterize this incident as compared to the others in Hoxon and various other cases? Well, Your Honor, I think ultimately this was an injury that resulted in him coming to the United States. It's an injury that has left longstanding emotional concerns for him. It's an injury that has affected his life because of how he continues to be an openly gay man and he's married. That's why it is something that continues and that is why it is something that's very relevant to him and his claim, Your Honor. It's not... The fact that it only occurred one time as far as that particular injury doesn't minimize the past persecution as far as we're concerned and as far as the harm that he suffered. Thank you, Mr. Haides. We'll give you one minute for rebuttal, if you'd like. Thank you. Mr. Lawrence. Thank you. May it please the Court, Victor Lawrence on behalf of the Attorney General. This Court should deny this petition for review because the harm that Mr. Bautista experienced did not rise to the level of past persecution. In your view, is the issue in this case whether there's substantial evidence to support that claim, Your Honor? Yes. Can we or should we consider what I would call the second incident in determining whether there's substantial evidence? If you're referring to the knife incident, no. That's what you're referring to, Your Honor? Yes. Okay. No, you should not consider it for several reasons. First of all, the exhaustion issue. It was never raised to the Board. The Board never even had an opinion, had an occasion to opine on this issue. Does it a general matter when someone makes an argument to the Board that the record as a whole demonstrates that there was past persecution, do they have to cite every individual incident supporting it have to be cited or else it disappears from the case? I mean, I know we haven't treated the record that way. Well, I somewhat disagree, Your Honor. The applicant does have a burden to raise any arguments that he believes... That's not an argument. It's a fact in the record. Sure, but if you exclude a fact and you say, we believe he deserves past persecution because of X, Y, and Z, and you don't include A, B, and C... And the record as a whole. He didn't say in the record as a whole, he didn't say that? I don't recall the exact language that he used as far as saying whether it's in the record as a whole or not, but we do believe that he had an absolute burden to come forward and say that this particular fact... Do you know any case that says that? I do know that in the court's exhaustion analysis generally, it talks about both legal claims like due process claims, and there's Barron v. Ashcroft, which is normally cited by this court as one being a prime example of you didn't raise a due process claim. Exactly, but do you know of any case that says you have to exhaust each fact? I don't know a case that says you have to exhaust each fact, but when it goes to the make about past persecution and you don't raise it to the board, the board doesn't have an opportunity to opine on that. But let me raise one other thing. But it's sitting there in their record. But let me raise one other thing about the knife incident. There is no testimony that this individual received these or got this treatment where the knife was put to his throat because he was gay. It's not there. If you look at page 128 of the record where he describes this, he does not say that that this happened because he was gay. He merely said, no, his husband actually testified to it initially at page one or two of the record. That's correct. Did he say it was because he was gay? He did not. He he was asked what what happened to him in Mexico. And he talked about this. And what he said was, you told me about it as opposed to him being a precipient witness. Right. He was not a precipient witness. He was told about it years later. Let's assume I'm not sure this is right, but let's assume for a moment that this is part of the. Let's assume two things that one, that incident is somehow relevant to our analysis and to that petitioner actually made is actually making an argument that there's no substantial evidence to support the finding, the finding below in the agency. And I'm not sure the second is correct either. I think he's making an argument that they applied the wrong legal standard. But assuming that those are both in front of us, is there substantial evidence to support the agency finding? There is substantial evidence, Your Honor. And, you know, to go to Judge Berzon's point that when she asked my opponent about how does this compare to other cases with respect to past persecution in the severity of what happened here as compared to other cases, I would say that this is an isolated incident that occurred 25 years ago by an unarmed stranger who we never saw again in the 13 months that he. But that wasn't what I was asking. I was asking just taking the isolated incident by itself. Was it a relatively severe incident compared to others? Understood, Your Honor. And I would say, you know, the two cases of isolated incidents where this court found that the record compelled a finding of past persecution were Aiden versus. That wasn't what I was asking. OK, sorry. I was asking as to the ones that were found not to be sufficient. How was this compare compare? So I think the only thing that this has, this case has going for it as compared to those where you did not find past persecution is the fact that he required some medical care. Right. But that's that's a big difference because in most of those cases they say, but he didn't. You know, this wasn't severe enough because he didn't require medical care. Well, medical care required. I'm sorry. But as this court said that in Sharma medical care is just one consideration. It's an important one. But but here within three hours after this incident, he was well enough to go to the police and report it. It's not like this. This. Yes. So we had to have some stitches to repair a cut. But it's it wasn't so severe that it that it laid him out for days or weeks or months. It was three hours later. He was he was at the police station reporting it. So I would say it was not a very severe case of this discrimination. Whereas in Prasad, for instance, the guy was beaten with sticks and and kicked and, you know, severely beaten here. This guy, Mr. Bautista, this incident may have been over in minutes, but his friends were there to try to take him off of him and take the attacker off of Mr. Bautista. And it was a very short incident from the second incident. There's no nexus showing with respect to the knife incident. There's there's no nexus. There's no nexus that this occurred in context. Wasn't it quite clear that when they were talking about he was being harassed and so on, they were talking about harassment doesn't necessarily necessarily. But in the context of what was being discussed both by the husband and himself. But your honor, what I would say there is the applicant has the burden to prove that he's a refugee and he had the burden to say that this harassment occurred because I was gay. It could have been as the record stands, that harassment could have been for any number of reasons. What page is that on, do you happen to know? The knife incident? Yes. 128. You know, and I'm I'm looking at page 128 now. Let's see. The husband testifies that you told me about something. And then the petitioner says something like, oh, yeah, I did tell you about that. Right. Right. But look at the question right before it on line 10 of 128. He said you testified about this incident that occurred in 1997. Was that the only time you were physically assaulted in Mexico? And he says, no, that's not the only time I was physically assaulted. He doesn't say the question wasn't, were you physically assaulted because you were gay on other occasions in Mexico? He doesn't. That's not the question that was asked. It's just saying, hey, were there any other times that you were physically assaulted? And he says, yes, my husband testified about this incident where they had a knife to my throat. But he doesn't say that that happened because he was gay. And that that underscores the point that this is the reason why it wasn't raised to the BIA, because it wasn't part of his evidence of past persecution on the nexus issue of whether it was done because he was gay. If that were the situation, it would have been raised, in my opinion, to the board. The board would have commented on it more. And the IJ would have commented on it more. The IJ did say in his analysis of the facts that this happened before he got into the analysis. He talked about the knife to the throat. But even IJ didn't say anything that it was because he was gay, just said that this happened to him in Mexico. So absolutely, it's just not something that should be considered in the past persecution analysis. What we have here is just discrimination that occurred. He was bullied in school. That was talked about because he was gay, that he did suffer some harassment, that his parents didn't like the fact that he was gay, et cetera. So he suffered this societal discrimination. But all you have besides that is this one incident in 1997, 25 years ago, for which, by the way, he didn't file an asylum claim when he initially came to the United States. It wasn't until 21 years after he was in the country that he brought this up, and only because he was charged with drunk driving and he wanted to stay in the United States. So he made a claim then for withholding a removal. It was too late to make a claim for of the realm of being past persecution. There weren't any specific threats. So you don't have anything but that 1997 incident. The knife incident just doesn't count. There's no nexus there, and it's not exhausted. So all you have really is that one incident in 1997, there were no specific threats that he would be killed. It was just a vague statement by the attacker that all gays must die or something of that extent, but much different than the specific threats that occurred in Aiden versus Wilkinson or in Fon versus Garland. I'd also point out to the court that this was just a single unarmed attacker. In cases where this court has found that the past persecution was compelled by the evidence, we were talking about people who were armed, like in Aiden, where you had 10 members of the Al-Shabaab who came in, destroyed the theater, and took a rifle and hit the guy's face to the point that he was bleeding profusely. Did the agency make a finding about government involvement? With respect to which... For past persecution. I don't believe that they made a finding. I couldn't find one. That's what I'm asking. I'm trying to find whether they made a separate finding. Even if this occurred, you haven't shown... Right. I think I made the point in my brief that in the event that this court does remand the case, that the agency should determine... That's why I was asking. I wanted to make sure that in reviewing the BIA decision, you agreed with me that they hadn't made a finding on that point. With respect to past persecution. Yes. In other words, let's assume there's past persecution. It would still have to be... It would have to have some either government involvement or approval or acquiescence. There's no finding on that in this record, right? I think I agree with you, Your Honor. Just for my quick read of... That's mine too. Yeah. Overall, again, the findings where this court has found that the evidence compelled a finding of past persecution involved much more than just an isolated incident, even one that had a little bit of medical care because he needed stitches. It has to be plus something else. That's something that Judge Wilkinson. Normally, that's something else. It's like a specific death threat. That's what you had in Aiden and in Fon, where not only was there a specific threat, but there was a continued interest in the victim. In Fon, they came back and tried to make sure that the individual wasn't still doing what he was threatened not to do. Same in Aiden versus Wilkinson. This was a one-time incident. He ended up staying in Mexico 13 months longer before he came to the United States. No other future harm. Thank you, Mr. Lawrence. No other past harm. Thank you. So we request that the court deny this petition. Thank you. Mr. Rodas. Thank you, Your Honor. I respectfully disagree with my colleague that this incident was just a nominal event. What? I'm sorry. I'm sorry. I didn't hear what you said. It was just a nominal event. Something simple, something ultimately that would not carry repercussions emotionally or mentally for my client. To ask the same question, to come back to this question, which cases would you direct us to say we're dealing with a similar level of persecution? Well, I would point, of course, to the Wilkinson case, not because it is identical, but because it has identified certain issues that are similar to my client. Similar in the form that they identify that a one-off event. A one-off event can ultimately be... But weren't all the one-off events, there's Fon and there's, what's the other case that we were just talking about, Aiden. But there were, in those cases, there were death threats associated with the incident. And here there was not that, is that right? That's right. There was not, in this particular instance, there was not a death threat. But I would like to bring the court's attention of the actual beating itself. The actual beating itself, but for my client not having his friends there and detaining that individual, it would have been more severe. That is something, a part of the record as far as how he was being beaten, that that individual was detained by his friends. So it can be reasonably assumed that the beating and injuries would have been more severe. The fact that they ended up the way they ended is a blessing. And it is, in Any further questions? Okay. Thank you, Ms. Raitis. Thank you very much. Thank you to counsel. The case is submitted.
judges: BERZON, HURWITZ, JOHNSTONE